Law Office of Howard A. Gutman
230 Route 206, Suite 307
Flanders, New Jersey 07836
(973) 598-1980
Attorney for Plaintiffs
_____

E.  L. Archie Payer            United States District Court

Sino American Technology, Inc      District of New Jersey

      Plaintiffs                 Civil Action No. 1:12-cv-01704-RMB-JS

      vs

A.J. Berrones, A.J. Berrones & Associates, LLC
Keith Doss, Benjamin Penfield,
Estrategia Investimentos, LLC, Estrategia, LLC
Estrategia Investimentos, S.A.
Metropolitan Financial Holdings Ltd.,
also or formerly known as Metropolitan Bancorp Ltd.
Goldie Dickey, Timothy Gates, Timothy Podolske ,
Dr. Sindhu Ratna, Pablo Antoniazzi, John Doe Corporation,

      Defendants               **Amended Complaint (2)**

_____

Plaintiffs, by way of complaint says:

**Introductory Statement**

1. This matter involves a fraud involving a worthless letter of credit.  For the past decade, defendant Pablo Antoniazzi has been involved in advance fee frauds and scams.  In an advance fee scheme, the victim is promised a substantial benefit in exchange for an upfront fee.  The victim pays the fee and the culprit(s) provides nothing, later stonewalling or providing false explanations.

2. The terms advance fee fraud and scam are not a characterization, but instead a finding made by the Florida Supreme Court after examining Antoniazzi's activities in a two year investigation and trial involving the testimony of numerous witnesses and examination of thousands of documents.   While Antoniazzi's company characterized itself as a lender or funder for small and medium sized business, the Court found no instance where the defendant had actually loaned money or funded a business deal.  Supreme Court Report, Exhibit A.

The consequences of Antoniazzi's frauds have been devastating for many of the victims, with life savings depleted and some forced to leave their homes.  See Supreme Court Report, Exhibit A.   In part because of the financial consequences of this loss, plaintiff Payer has listed his home so that he and his family will have sufficient assets in his advanced age.

3. Antoniazzi's company defendant Estrategia created a letter of credit scheme where people would purchase letters of credit with large stated amounts for less than 1% of their stated value.  ("the Bogus Letter of Credit Scheme").  Estrategia associated with the named defendants herein to sell the worthless letters of credit and defraud the plaintiff along with others.

**Organization of the Complaint**

4. The complaint is organized as follows.  Paragraphs 1-9 of the Introductory Statement outline the defendants' fraudulent scheme.  The complaint then provides a description of the parties and the role of each in the scheme.  We then set forth a chronology of the fraud, noting when misrepresentations occurred, when payment was made, how the fraud was concealed, and how plaintiff was solicited for a second fraud.

These are set forth as common allegations applicable to each count of the complaint.  Incorporating the common allegations, the complaint sets forth particular causes of action including violation of the Consumer Fraud Act, common law fraud, violation of the RICO statue, and civil conspiracy.   The complaint then sets forth jurisdiction noting that a New Jersey resident was targeted for the fraud, with each defendant knowing he was located in New Jersey, and the monies to pay for the bogus letter of credit transferred from New Jersey through a New Jersey bank branch.

5. The codefendants together convinced plaintiff to pay $275,000 for the worthless letters of credit issued by Estrategia and others associated with Estrategia.  Plaintiff expected to receive 66 million dollars out of a gross stated amount of 100 million.  Plaintiff received several worthless letters of credit with the face amount on the letters of credit varying with one  listing a face amount of 2 billion five hundred million dollars.  See Exhibit B.

Plaintiff received nothing from the letter of credit, not a single cent, as the letter of credit was wholly worthless as Estrategia and the other defendants knew.   Other individuals and companies have been victimized by defendants utilizing the Bogus Letter of Credit Scheme during the period  March, 2009 to March, 2011, and thereafter.   See, e.g., Exhibit C, (complaint by other victim setting forth loss of 1.2 million dollars.).   After the filing of the original complaint, plaintiff has been contacted by other persons or entities who have been similarly victimized, paying

substantial monies for useless letters of credit, receiving nothing of value, and being given various false stories about why what the defendants originally said turned out to be false.

6. The co-defendants were involved with soliciting the Estrategia Bogus Letter of Credit Scheme, receiving the payment and helping to execute their fraud, with their individual roles detailed below.  During the period February, 2010 to March, 2011, they made false statements such as that Estrategia was a 20 billion dollar entity, Berrones was a wealthy international businessman with a private plane, and that a false financial statement set forth Estrategia's worth.  See Exhibit E.

As part of the scheme, Estrategia had one of the perpetrators (Sindhu) occupy the position of compliance manager after the fraud pretending that he was investigating a case of a mismatched letter of credit, then attempting to sell plaintiff another worthless letter for a substantial sum, before finally acknowledging that the letter was functionally worthless and to be honored, someone would need to deposit the entire amount of the letter (100 million dollars) beforehand with a bank.

7. The defendants conspired with each other to violate multiple criminal statutes during the period February, 2010 to April, 2011 in connection with the Bogus Letter of Credit Scheme.  It is not easy to defraud even a credulous elderly person out of a substantial six figure sum.  The defendants managed to do so by providing  the victim with false information from multiple sources skillfully presented in different ways.

8. The appearance of the Estrategia  letter of credit mirrored documents prepared by legitimate banks and lenders, and Estrategia, Doss, Berrones, and Metropolitan provided the victims with websites showing Estrategia's status as a lender to small and medium-sized companies throughout the world.  The preparation of documents looking like legitimate ones is a common theme in these frauds.  See Report, Exhibit F, Anatomy of Financial Fraud, citing FTC and other governmental reports.

With Berrones approval, Doss told plaintiff they were quite familiar with Estrategia and that it was a 20 billion lending institution similar to Citibank whose instruments would be readily honored in the business community,  Gates and Podelski told plaintiff they would arrange for the letter of credit to be honored or monetized, and Penfield explained (before Payer forwarded the funds) that he would act as an adviser and that he had carefully analyzed the particulars of the transaction and that Payer could be assured the international bank instrument would be quickly and effortlessly honored.  Working with Doss, Berrones reviewed and coordinated the fraudulent statements so they became part of a carefully orchestrated scheme where the victim was provided multiple sources of information- documents,

statements  from multiple sources, emails, and websites, seemingly assuring him of the validity of the transaction.

9. Once the victim lost money and found the letter of credit could not be honored or used, the perpetrators went into action to delay his awareness of the fraud and conceal the deception.  Estrategia had Dr. Sindhu, a participant in the fraud, act as a compliance manager and pretend to be carefully investigating the matter, initially saying the problem was a mismatched account number.

Plaintiff brings claims under the federal RICO states and other law.   The defendants herein were a criminal enterprise involved in defrauding plaintiff through the Bogus Letter of Credit Scheme.  Their actions not only constitute fraud, and violate multiple laws, they are criminal, cheating individuals and companies out of large sums of money.  This type of conduct involving a criminal enterprise is the reason why the RICO statute was enacted and provides remedies in an attempt to deter and punish the conduct.

Sadly, to date the legal remedies have been inadequate as the defendants continue their unlawful pursuits.   States have a strong interest in deterring these deceptions and protecting their citizens.  A 2007 report discussed how fraudulent letter of credit and Swift documents have been used to mirror international transactions and defraud credulous victims.  See Exhibit F.

10. The defendants were involved with soliciting a New Jersey resident for this fraud.   The defendants knew he was located in New Jersey because plaintiff's Wenonah New Jersey address was listed in at least 20 emails supplied during a 15 month period in which the fraud took place from February 2010 to April, 2011. Plaintiff's  New Jersey telephone and New Jersey fax number were also listed in these multiple email, defendants  initiated calls to the New Jersey number and the bank transfer where plaintiff was victimized came from a bank located in New Jersey. Each of the defendants knew it was playing a vital role during the above period in defrauding plaintiff Payer.

11.  Defendants continue to operate their frauds and solicit new victims and New Jersey has a strong interest in preventing fraud, and protecting its citizens.  A claim under the New Jersey Consumer Fraud Act is included because this is the type of fraud the statute is designed to prevent.

**Description of the Parties and Their Roles in the Fraud**

1. Pablo Antoniazzi  is the owner and or president of Estrategia Investimentos, S.A. (Estrategia) and has been engaged in the conception and execution of advance fee frauds.

*Antoniazzi's Advance Fee Fraud and Florida Supreme*
*Court Findings about that Scheme*

2.  In 2010, the Florida Supreme Court came to investigate Antoniazzi's business and the conduct of his lawyer, Martin Edward Doyle.  They had received o complaints from multiple victims who had lost substantial amounts of money and a detailed investigation was initiated resulting in factual and legal findings about Antoniazzi's business and those of his companies.

3. The Florida findings were made after a two year investigation and trial involving the review of numerous documents, testimony from numerous witness and a detailed setting forth the Court's factual and legal findings.   Exhibit A, Report of Florida Bar v. Doyle.  During the investigation, both Antoniazzi and his attorney were afforded the opportunity to present evidence submit documents and provide testimony which they did.  Exhibit A. Supreme Court Report.

4. The Florida Supreme Court which conducted the hearing found that Antoniazzi defrauded a number of victims promising funding or loans for various investments and ventures but delivering nothing after receiving the victims'  payments.

5. The report found frauds with the same modus operandi,

> The Trelles/Saralegui, Burns, Ribenfell, and Borrell transactions were a type of "advance fee scam" whereby the victims were duped into paying substantial monies "up-front" for fictitious loan opportunities. The scams were perpetrated by Tavares (FIS) and Antoniazzi (GBH), with the assistance of Respondent and the Firm's trust account.  Court Report, para 48.

6. The terms "advance fee fraud" and "scam" are not conjecture or characterization by plaintiff.  Instead, they represent an accurate term used by an impartial judicial body to accurately and succinctly describe Antoniazzi's business.  Likewise, "fictitious loan opportunities" is the description provided by a State's highest judicial body.

7. While defendant may suggest that the loss of monies were an accident, the Supreme Court Report dispels that notion, demonstrating that defendant Antoniazzi's falsehoods have been part of a well-planned scheme.

> The Firm's investigative team found tens of thousands of pages of documents regarding loan transactions, and there was not one single legitimate deal among the pages. They also discovered documentation of approximately 18 additional deals similar to the ones described above. Yet not one single closing binder or set of closing documents was ever found in Respondent's possession.  Supreme Court  Report, para 51, Exhibit A.

*The Estrategia Letter of Credit Fraud that Victimized the Plaintiff*

8. Antoniazzi and co-defendant Dr. Sindhu Ratna created a group of companies using the name Estrategia to perpetrate the same type of advance fee fraud utilizing worthless  letters of credit and fictitious loans or funding.

9.  Estrategia Investimentos, LLC, Estrategia, LLC and Estrategia Investimentos, S.A are companies organized by Sindhu and Antoniazzi.  In an August 9, 2012 affidavit, defendant Sindhu stated that Estrategia, LLC was incorporated in the State of Delaware.

Estrategia Investimentos, N.A. (Estrategia) was created as a lending institution or bank and established a location at 2828 Coral Way, Suite 435, Miami, Florida 33415.  The company alone and with the other Estrategia entities would be portrayed as a large international lender.   In fact, Estrategia would have little or no legitimate business.  but would instead be utilized as part of a criminal enterprise to commit fraud and violate multiple federal and state criminal statutes including those prohibiting wire and mail fraud

        A. The Estrategia entities collectively engaged in deception and are collectively referred to in the complaint as Estrategia.

10. Defendant Dr. Sindhu Ratna (Dr. Sindu) is a principal in Estrategia and operated the business of Estrategia and supervised fraudulent activities involved with the Bogus Letter of Credit Scheme.   He took the title of compliance manager with Estrategia.  A compliance manager with a securities firm typically reviews transactions to assure compliance with various laws.  The title was chosen so that victims would believe the company was legitimate and contact him when they were defrauded and he could pretend to perform an investigation.  Defendant Antoniazzi is also a principal, owner, and officer of Estrategia, helped operate the business of Estrategia and committed or supervised fraudulent activities involved with the Bogus Letter of Credit Scheme.

11.  Letters of credit are used to facilitate commercial transactions, frequently international ones.  A letter of credit issued by a reputable and well-capitalized bank insures payment.   Thus, when well-known banks such as Citibank issue a letter of credit, companies and other banks know the funds will be provided.

12.  A letter of credit is only as good as its issuer.  Estrategia is poorly capitalized and its letters of credit not accepted in commercial or international commerce.  Third party entities can evaluate the letters of credit.  This Estrategia and its owners and executives, Sindhu and Antoniazzi, knew.

13. Estrategia has engaged during the last five years in a plan and scheme to have companies and persons pay for these worthless letters of credit.  Estrategia co-

conspirators and agents would tell gullible people that the letters of credit would be honored, provide the letter of credit, and then when the victim attempted to use it, would find it was dishonored or rejected.  Estrategia and its conspirators would then pretend that unexpected problems occurred.  Estrategia and conspirators pretended that difficulties with the particular numbering on the letter of credit were preventing it from being honored.

14. Plaintiff was one of many victims in the Estrategia Bogus Letter of Credit scheme.  On November 20, 2011, he arranged for payment of $250,000 to Estrategia which money was lost in its entirety.  Within 10 days, he forwarded an additional 25,000 because Berrones and Doss said that was needed to complete the transaction.  Part of the money came from his company, Sino American Technology, Inc, and that company is included as a plaintiff and was also targeted in the fraud.

15. Defendants Estrategia's, Sindhu's and Anontiazzi's's involvement in the fraud and unlawful acts is shown in a number of ways:

## 1. Creation of the Worthless Letter of Credit Scheme

Estrategia and its principals conceived the worthless letter of credit scheme and have issued numerous letters of credit none of which have been honored.  Instead numerous persons or entities have been defrauded.  See Exhibit C, (Describing victims in another state who lost over a million dollars with investors in the publicly held company also deceiving in believing that a 100 million dollar investment was being made.

## 2. Metropolitan Acting as Agent

 Metropolitan acted as Estrategia's agent throughout the transaction and helped market the letter of credit through false statements, done with Estrategia and its officers' knowledge or authorization of their falsity.  On multiple occasions through the period February, 2010 to March 2011,  Metropolitan said that Estrategia was a 20 billion dollar international company with excellent standing whose letters of credit would be readily honored by other banks.   Defendant Dickey is an officer, owner, or director of Metropolitan and wrote on a webpage,

> I serve as the International Banking Relationship Manager for Metropolitan Financial Holdings Ltd., formerly known as Metropolitan Bancorp Ltd. Through my work, I became the Institutional Affiliate for Estrategia Investimentos S.A., a bank located in Brazil. Estrategia Investimentos S.A. is an open-ended investment company looking to capitalize on burgeoning markets in India, as well as Eastern and Central Europe.

Specifically, Estrategia Investimentos S.A. hopes to expand into the areas of western-style offices, residences, production units, retail outlets, and more. Starting out, Estrategia Investimentos S.A. conducts business on the micro level, all the while targeting investments in infrastructure projects. Toward that goal, Estrategia Investimentos S.A. works in tandem with various investment companies and local banks. Primarily, Estrategia Investimentos S.A. aims to create a vast network of business complexes, serving traveling businesspeople….

Estrategia Investimentos S.A. encourages interested parties to seek further information at www.estrategiainvestimentos.com.

None of these was true.  Just like Antoniazzi's business solicited advance fees but provided nothing, Estrategia did the same.  It provides little or no funding for legitimate projects but operates only to take advance fee payments from gullible victims.  Like other victims, plaintiff would see the letter of credit and because of his limited knowledge of commercial transactions would assume it would be valid and honored,

### 3. Estrategia Website

They created a website which falsely portrayed it as a large bank and institutional lender, to again have victims believe that letters of credit were used in commerce and honored.  www.estrategiainvestimentos.com  The communication of false and misleading statements on the Estrategia website was part of the fraud.

### 4. Fake Compliance Officer

When the letter of credit did not result in any funds forwarded to plaintiff, Sindhu the compliance officer pretended that unexpected problems were delaying it being honored.  It did this knowing that the letter of credit was worthless, other victims had received nothing, Estrategia did not have 100 million or anything close to that to fund anything, and no bank or other financial institution would accept it.

### 5. Hiding and concealing the fraud

Following the payment on November 22, 2010,  Payer found that nothing happened, no money was forwarded and the letter of credit was honored by no bank or other banking institution for the next three months.  On or about 12/30/10, defendant Estrategia forwarded an email pretending that a clerical error in the routing was preventing processing of the letter of credit.  This was designed to continue the fraud and frustrate its detection through the communication of false information   In fact, at that time, Estrategia and Sindhu knew plaintiff was another hapless victim who would receive nothing from the letter of credit.

16. Metropolitan Financial Holding, Ltd (Metropolitan) is a company which stated it was located at Level 20, ASB Bank Centre, 135 Albert Street, Auckland, New Zealand 1010.  Metropolitan Capital & Financial is located at 502 N.W. Sheridan Road, Suite 6 A, Lawton, Oklahoma.

17. Metropolitan acted as Estrategia's agent in marketing the letter of credit to plaintiff.   Estrategia referred to Metropolitan as its client in an email and was aware and authorized its activities during the period February 2011, and March, 2011 involving the plaintiff victim, and during other pertinent periods with multiple other victims.  See exhibit C.

**Berrones Doss Group**

18. A.J. Berrones (Berrones) owns, controls, and or operates A.J. Berrones Associates.  A.J. Berrones Assoc would be utilized as part of a RICO criminal enterprise to violate multiple federal and state criminal statutes including those prohibiting wire and mail fraud.

19. Those included the sale of the Estrategia bogus letters of credit to plaintiff and receipt of the proceeds.   Berroness and his company committed other criminal acts.

20. There is little or no legitimate part of component to Berroness Assoc and the entity was created and acted to violate multiple civil and criminal laws.  In conjunction with directing his company to violate these laws, Berrones also personally committed deceptions and illegal acts.  Both Berroness and Assoc, and Berroness himself contacted plaintiff about the letter of credit.

Berrones himself has used over 20 addresses during the last five years, in part to evade victims, creditors, and law enforcement personnel, and frustrate investigation and reimbursement to victims.

21. Keith Doss (Doss) is an individual whom Berrones utilized to commit or assist in various frauds including the Bogus Letter of Credit Scheme.  During the period February 2010 to March, 2011, Berroness and his company authorized Doss to utilize a Berroness & Co email, state that he was associated with the company and have Doss contact plaintiff to have him purchase the letter of credit.

22. Additionally, Doss contacted a number of other persons and successfully defrauded them.

23. The participation and fraudulent conduct of the Berroness/Doss/Penfield group includes the following,

### 1. Solicitation

Doss contacted  Payer to solicit and complete the fraud.  From February, 2010 to March 2011, Doss and Berrones were working on multiple frauds together involving the bogus letter of credit scheme.

### 2. Consultation and planning of the fraud

Berrones and Doss met and consulted about effective ways of perpetrating the fraud, what false statements to make to plaintiff, the creation of fraudulent documents such as a bogus financial statement of Estrategia.

### 3. False and Deceptive Statements

On multiple occasions from March, 2010 to December, 2010, Berrones and Doss stated that Estrategia was a 20 billion dollar company whose letters of credit and other obligations would be readily honored in the international community.  This included  a conference call about 45 days before plaintiff Payer forwarded $250,00 to Berrones on November 20, 2010.

### 4. Generation of False Financial Statement

Berrones and Doss prepared a false financial statement of Estrategia's worth and value.

### 5. Enlisting or Utilizing Other Participants  They helped enlist other participants to present the image of a legitimate transaction and to coordinate the presentation of false information from multiple sources.

### 6. Forwarding the Fraudulent  Letter of Credit

Doss forwarded the fraudulent letter of credit on September 11, 2011 Exhibit C. This was done with Berrones's approval

`    ### 7. Coordinating with Other Participants in the Fraud

Doss and Berrones coordinated with other participants in the fraud.  Berroness had Penfield play the role of impartial adviser whereby he said he was familiar with Estrategia's operations  and that Payer could invest with assurance.

### 8. Receipt of the fraudulent funds by Berrones

Berrones received $250,000 from Payer and his company on November 22, 2010

### 9. Hiding and concealing the fraud

Following the payment, Payer found that nothing happened, no money was forwarded and the letter of credit was honored by no bank or other banking institution for the next three months.  Doss provided various explanations and excuses, and the elderly plaintiff was becoming worried that he had lost much of his life savings, and contacted Estrategia and Sindhu.

24. Ben Penfield (Penfield) is also an associate with Berrones and was located in Merced, California.

25. With Berroness consent, Penfield portrayed his role as an adviser who could provide counsel.  Penfield explained that he was familiar with the letters of credit and Berrones and both were top-rate and he could be assured of receiving payment.   He noted that Berrones had a private plane and Estrategia was a large international bank whose obligations would be readily honored.   In fact, Penfield and Berrones have worked together on various frauds, and Penfield knew from the onset this was one of these frauds.  Plaintiff spoke with and exchanged emails with Penfield during the period March, 2010 through April 2011, and Penfield reiterated the misrepresentations about Estrategia's status and also advised plaintiff that Berrones was a highly successful entrepreneur with a private plane and substantial wealth who could be trusted to perform his obligations.

### Podolske and Gates

26. Part of the scheme was to have the letter of credit honored or monetized.  Timothy Gates is an  individual who professed to have contacts with co-defendant Estrategia Bank, and experience acquiring and handling SBCL notes.  Podolske and Gates served the role of purported monitizer during the pertinent time period, persuading plaintiff that there were banks that would extend funds based upon the letter of credit.   Each was represented to be able to monetize or process the letter of credit and facilitate plaintiff's receipt of 66 million dollars or other substantial sums set forth in the letter of credit.  Each knew plaintiff would receive nothing, that the co-defendants representations were false, and this was an unlawful and illegal scheme to defraud.

A. After Payer lost the initial $275,000 Podelski attempted to have plaintiff Payer put more money into the fraudulent scheme, as detailed below.

27.  Plaintiff  E.L. Payer, known as Archie Payer in the parties' dealings is an elderly man of 78 years old residing at 314 N. West Avenue, Wenonah, New Jersey 08090.  He has a company called Sino American Technology, located at his home at the same address.  Both plaintiff and his company were targeted in the fraud, and the company is named as a plaintiff as it is listed on various documents since it was

also targeted as part of the fraud, listed on certain documents, and played a role in providing the funds that plaintiff Payer lost.

### *Common Allegations and Chronology of Events*

1. A.J. Berrones created a criminal organization to solicit and defraud credulous persons called A.J. Berroness & Assoc.  Berroness was the owner and director of the company.

2.  Defendant Doss became a part of A.J. Berroness & Assoc.  Doss was authorized to use the name A.J. Berroness & Assoc and provided with an email address, and a Skype address.  Berroness and Doss were both located in the Merced area of California  and during the years 2010 and 2011, would discuss how to defraud individuals, what misrepresentations to make, what fraudulent documents to create, and how to make money on various fraudulent schemes.

### *Initial Solicitations to Plaintiff Feb. 2010 to June, 2010*

3**.** Doss sent or received at least 10 emails from plaintiff Payer during the period . Feb. 2010 to June, 2010.

4. The initial calls to Payer dealt with various issues including the cultivation of a personal relationship between the two.

5.  Doss first brought up the idea of a standby letter of credit.  Doss outlined a deal whereby plaintiff would obtain substantial funds through a letter of credit.

6.  During the initial discussions, Doss initially mentioned Citibank.    Neither Doss nor Berroness has any intention of involving Citibank in any transaction and knew Citibank would reject any involvement or use of the bogus letter of credit.

7. Doss compared Estrategia to Citibank to present the image of Estrategia as a well-known, well-regarded international banking institution which provided funding to various entities including small and medium sized entities as set forth on its website.  As noted, nothing could be further from the truth.

8. Estrategia is a small outfit whose purpose is to perpetrate fraud with one of its primary vehicles the bogus letter of credit.   At various times between March-October, 2010, Doss and Berrones discussed the letter of credit with plaintiff.

9. During discussions  with plaintiff during the period June, 2010 to October, 2010, on multiple occasions, Doss, Berroness, and Metropolitan told plaintiff that if he provided $275,000, a document would be issued with a face value of 100 million dollars of which a substantial part, 66 million dollars could be used by Payer.   That is the letter of credit outlined below which induced plaintiff to forward 275,000.

10. Metropolitan was Estrategia's agent and also contacted him on multiple occasions during the period March, 2010 to December, 2010.   Metropolitan participated in a conference call with plaintiff approximately 45 days before plaintiff provided the funding.  On the call were Berrones, Doss, Dickey from Metropolitan, and Payer.

11.  During the conference call, Berrones repeated that Estrategia was a 20 billion dollar company whose instruments are routinely honored because of its size, financial stability, and reputation and Metropolitan made similar statements

12. Nothing could be further from the truth.  Estrategia a small poorly capitalized company which does not or cannot provide legitimate funding.  No domestic or international bank would accept or monetize an Estrategia letter of credit which defendant Sindhu would later acknowledge.  See exhibit C.  The statements were false and fraudulent, each participant knew they were false, and they were designed to deceive the plaintiff and did in fact deceive him.

### *Issuance of Fraudulent Letters of Credit*

13. On or about September 11, 2011, Doss forwarded a letter of credit bearing Estrategia's name.  Exhibit C.   The note states:

> We, the undersigned Estrategia Investimentos S.A. Rio De Janeiro, Brazil, open our irrevocable standby letter of credit to the account of our client Metropolitan Bancorp in the aggregate amount of 65 million dollars U.S. dollars only.  This credit is redeemable and payable upon presentation on due date at our counters against your draft drawn on us and duly signed, notarized and dated certificate .   See Exhibit B.

14.  Three letters of credit were issued in the name of Estrategia.  None of these would be honored and they were each and collectively worthless as Estrategia, Antoniazzi, Sindhu, Berroness, Doss, Metropolitan  knew, as were other letters of credit issued in Estrategia's name.

### *Other Frauds*

15. During 2010 and 2011 when this fraud took place, defendants would be successful in defrauding a number of other persons and companies with its advance fee/bogus  letter of credit fraud.   Exhibit C is the complaint in another letter of credit fraud which victimized a company with the same misrepresentations about false funding and letters of credit, and resulted in a false Securities Exchange Commission filing.  The company stated in a press release that it had secured a $200 million letter of credit  which would be pledged to secure a loan to launch a mortgage inspection program.   Investors and the public were deceived when that letter of credit, like plaintiff's, turned out to be useless.

16.  Payer had little knowledge of commercial transactions and relied upon Doss and others, the documents that were furnished, statements on the websites and other false statements made herein.

17.  At the initial contact and in the following months, Doss and his cohorts provided false and misleading information which included false statements about the validity of the note that would be issued, and its value.  In fact, any document could not be transferred or negotiated and was essentially worthless.  During the time period encompassed by the fraud, February 2010 to March, 2011, Berroness and Doss coordinated about how to effectuate the fraud, what misrepresentations to make, and the create of false documents such as a false financial statement. Exhibit E.

A. During this time period Doss and Berrones coordinated to deceive or attempt to deceive other persons and entities, and divide the proceeds from the victims with codefendants and between themselves.  Doss and Berrones would later argue about how the proceeds of their other frauds and who would be responsible when the victims complained or instituted legal action.  Doss complained he had not gotten his fair share of the proceeds from other of their frauds.

18.  Defendant Doss contacted plaintiff on or about 6/27/10, and discussions continued during the next 10 months.

19. Plaintiff understandably had questions and received false responses from Doss and Berrones.  Additionally, they referred him to the Estrategia website which supposedly contained information about the company.

*Estrategia Website Used to Deceive Plaintiff*

20.  Estrategia created a website designed to deceive the public and plaintiff.   The website contained many deceptive statements about Estrategia's business including the following,

> A high percentage of trade operations nowadays fail because the small to medium size companies cannot get the help they deserve from large banks due to the heavy regulation they are under since the last economic crisis. Their demands for simple operations are business restrictive for most entrepreneurs starting their own companies. That is where we come in. Estrategia Investimentos will provide all the financial instruments our clients need in an efficient and fast manner with the friendly and personal customer service that has become a staple of our Business Model.
>
> A high percentage of trade operations nowadays fail because the small to medium size companies cannot get the help they deserve from large banks due to the heavy regulation they are under since the last economic crisis. Their demands for simple operations are business restrictive for most entrepreneurs starting their own

companies. That is where we come in. Estrategia Investimentos will provide all the financial instruments our clients need in an efficient and fast manner with the friendly and personal customer service that has become a staple of our Business Model. Our standard SWIFT Instruments:

MT700 DLC (Documentary Letter of Credit)
MT799 BCL (Bank Confirmation Letter)
MT760 SBLC (Stand By Letter of Credit)
MT760 Performance Bonds
MT760 APG (Advance Payment Guarantee)

Plaintiff reviewed the Estrategia website before entering into the transaction herein and was deceived believing that Estrategia was a prominent commercial lender whose instruments would be honored rather than rejected as worthless as Estrategia, Sindhu, and Antoniazzi knew. The website is false or deceptive for the following reasons,

- The financial instruments Estrategia provides are useless and not honored by banks or other financial institutions, as Estrategia and its principals knew. Later in the transaction, Sindhu would acknowledge that unless the underlying funds were physically deposited, the letter of credit would be useless.

- Estrategia has no legitimate funding business as the Supreme Court found. The references to funding are designed to deceive victims into believing there is a funding mechanism.

**Podelske's And Gates Role**

21. Defendants Gates represented that he was involved with trading and investments, and arranging the SBLC with Estrategia Bank. During the pertinent time period, Gates knew at this time and thereafter that,

A. that the investment was worthless, and the underlying SBLC was equally worthless, or had minimal value, nothing close to its stated amount,

B. No Bank or other financial institution would be honoring the instrument and providing funds as represented.

22. Defendant Podelski likewise represented that he was involved with trading and investments, and arranging the SBLC with Estrategia Bank. During the pertinent time period, Gates knew at this time and thereafter that, that the investment was worthless, and the underlying SBLC was equally worthless, or had minimal value, nothing close to its stated amount. No Bank or other financial institution would be honoring the instrument and providing funds as represented.

23.  A second useless letter of credit dated November 24, 2010 was issued under Estrategia the name and reads:

MR. ANDRE PESENTI, DIRECTOR. WE NEED TO DELIVER OUR AUTHENTICATED MESSAGE FOR YOUR ACCOUNT HOLDER. SBLC NUMBER: ESTRSLC101190. BENEFICIARY- BACKSTAGE ASSETS MANAGEMENT AG. REF: CANADA FOUNDATION/DR. W. TAO. CLIENT ID: 401 506 51. IBAN NO:CH850825 3000 0153 88059 USD. CUSTODY ACCOUNT: 800 925 42. AMOUNT- TWO HUNDRED MILLION USDOLLARS.
ISSUED- NOVEMBER 24,2010.
MATURITY- DECEMBER 24,2011.
TRANSACTION CODE: IDI-20M-11-1410-001.
WE SHALL BE THANKFUL TO YOU FOR THE ACCEPTANCE OF OUR RMA REQUEST ASAP.  OUR SYSTEM HAS BEEN ACTIVATED FOR YOU.  THIS IS OUR REQUEST-REMINDER.

REGARDS ESTRATEGIA INVESTIMENTOS S.A.

A. Sindhu provided a Declaration to the Court stating that on "November 24, 2010 Estrategia issued a letter of credit at the request of Metropolitan Bank Corp." August 9, 2012 Declaration of Sindhu.  The letter of credit says, "We the undersigned, Estrategia Investimentos, located at Rio De Janeiro, hereby confirm with full responsibility our irrevocable, transferable and assignable letter of credit." The document contains multiple false, deceptive, or misleading statements including the following,

- The term "full responsibility means nothing."  Estrategia did not have anything close to two hundred million dollars in assets and could not in any way honor such a document.

- The term transferable or assignable is likewise deceptive and misleading.   It is consistent with the various statements about Estrategia's worth and how its instruments would be honored.  No commercial entity would take action or extend credit based upon the bogus letter of credit.  Impartial ratings organizations would either ignore Estrategia or categorize its instruments as poor.

- The term "Such payment shall be duly honored on date of presentation" is also deceptive.   The opposite is true, nothing would be honored for the worthless letter of credit.

This form has been used in other letter of credit frauds as part of the overall Bogus Letter of Credit Scheme.

24. On or about November 24, 2010, Berrones called plaintiff and requested that the funds, namely $275,000 be sent.  He knew at this time,

    A. that the investment was worthless,

    B. the underlying letter of credit would never be honored and no monies would ever be forwarded.

    C. that others had been similarly defrauded.

25. On or about November 26, 201, a process purported to verify the note was done.

26. Plaintiff made arrangements to pay $275,000.  The monies were sent to defendant Berrones.  Specifically, plaintiff borrowed 250,000 from a bank in New Jersey and arranged to forward that amount to Berroness in two installments, the first comprising 250,000 sent on 11/26/10.  The wire transfer was made through Bank of America in New Jersey.  The wire was sent from a New Jersey bank and initiated while plaintiff was in New Jersey.  By the return, defendant Berrones would know that the wire transfer came from New Jersey and he had defrauded a New Jersey resident.

27. Plaintiff took all or part of the funds from his company Sino American Technology or utilized the company for the transaction.  For that reason, the amended complaint added this company as a plaintiff.   Those funds were needed for his retirement and the lack of those funds has placed him in serious financial difficulty.  Plaintiff has undergone substantial stress and worry, and the loss of the funds has or will create health problems associated with that stress.

*Attempts to Use the Worthless Letters of Credit*

28. Following his receipt  Plaintiff attempted to use and present the letter of credit but was wholly unsuccessful.  The letter of credit was useless and worthless.  No part of the 275,000 paid to obtain the useless letter of credit was ever returned.

29. Part of the method by which the fraud was conducted was to prevent the victim from investigating and ascertaining  the truth.

30. On or about 12/13/10, Keith Doss contacted plaintiff noting the involvement of co-defendant Metropolitan.   On or about 12/17/10, correspondence was sent between Gates, Berrones and Keith.

31. On or about 12/30/10, defendant Estrategia forwarded an email which plaintiff received which stated in pertinent part:

1. The first swift had the mismatch in amount which was immediately rectified.  I enclose both the swift copies for your record;

2. We had routed it thru Bank Hapoalim as we did not have RMA with LLB. You say that the swift was fake. I enclose the swift received from bank Hapoalim confirming they received our swift but were unable to relay it to LLB as they did not have keys with LLB. So this evidence will confirm to you that we do not give swift advice copies to our client,

3. Thereafter we were forwarded an email from your bank officer addressed to Metropolitan that they never received our RMA request sent on Dec 13;

4. We resent the RMA on December 22 and sent the copies to your bank officer as directed by Metropolitan so that we move bank to bank to break the ice about swift relationship with LLB;

There were several significant parts of the emails:

- They indicate or imply that the instrument appears to be valid and that just some items need to be corrected,

- They confirm Estrategia's central involvement in the fraud.  Plaintiff could check records and confirm their status.

- They document and confirm Estrategia involvement with co-defendant Metropolitan.  In paragraph 6, they indicate that were taking direction from co-defendant Metropolitan.

During this time, Berrones instructed plaintiff not to contact other persons or parties during the transaction.

32. On or about January 24, 2011, Berrones wrote:

Archie, you have been directed in previous conversations … not to break protocol as it pertains to bank contact.  I am instructing all parties all parties associated with A.J. Berrones and Associates to cease dealings with you regarding this transaction as you have continued breaking protocol and contact our banker without authorization.

33. Not only did Berrones and his entity help commit the fraud, it knowingly and deliberately acted to prevent plaintiff from discovering the deception by continuing to lie to him.

34. Defendants Penfield and Goldie Dickey from Metropolitan received a copy of this January 24, 2011 email.  Each knew and had reason to know that,

A. the papers Payer received or was given were fraudulent and worthless,

B. that the statement were made to prevent discovery of the fraud,

C. timely intervention could prevent the fraud, or help recover all or part of the monies taken.

35. On January 12, 2011, Payer was beginning to realize that this may be a scam. Doss pretended that there were delays, miscommunications, and that other parties might be responsible for processing problems.  Again, Doss, Pennfield, Berrones and others knew that the proposal had been worthless, the scam was completed, documents were concocted or forged, and what Payer thought he was getting was worthless.

Doss said, "We are expecting a valid written response from the bank."  We would like to trust you that what you are saying is true.  The purpose of Doss' email was to pretend other people were delaying the transaction or that he (Doss) and his cohorts had been deceived.  As Exhibit A shows, this type of deception was a part of the advance fee scam.

36. Payer labored under the impression furthered by Doss and the other defendants that was or could be a legitimate transaction.  Payer wrote to Doss on February 1, 2011:

What we need from Estrategia Investimentos is the following.  We need Estrategia Investimentos corresponding Bank to issue an MT799 followed by an MT760 to our bank in or for us to his BG.  We cannot use a RMA bank.  I am aware that El has a relationship with Claridan Lu which is the private banking side of Credit Suisse we need them to use the Corresponding Bank to execute this transaction on behalf of Estrategia Investimentos Brazil.

At bottom, this was a fraudulent note, which plaintiff because of his age, lack of knowledge and experience thought had some value.  No reputable bank would have anything to do with it, and the various defendants played on his lack of knowledge and understanding of these commercial instruments to defraud  plaintiff.

37. On February 4, 2011, Doss wrote:

We are currently working on getting procedures for SBLC from our Banks in Europe.  As you know we work with BG, and have procedures for BG's.  As mentioned before we will be getting updated procedures for SBLC first part of next week.   In the meantime, please forward the Verbiage and get it approved so that we can close this asap.

38. On February 18, 2011, Doss wrote to plaintiff with copies sent to Berroness and Penfield.  As with the prior emails, the purpose of this one was to conceal the fraud, pretend that others were responsible, and prepare plaintiff for further deception and fraudulent solicitations.  Doss wrote, Archie, thanks for your further comments. I think this needs more discussions to enable me to set this up with our bank. Normally our banker expects us to be absolutely clear upon what we want especially with negotiable instruments such as an SBLC.  Here, Doss misrepresented his connections with banks, and the negotiable of the fraudulent SBLC notes.

39. On March 18, 2011 Doss also wrote to plaintiff with copies to codefendants Berroness and Penfield.  Each failed to reveal with truth or correct the misrepresentation.

40. Throughout the transaction, each of the defendants  had a duty to provide truthful information, refrain from deception, correct false statements, and obey applicable laws in its dealings and transactions.   Where third parties were affiliated with Estrategia, each had a duty to correct any false statements and disclose material facts about what it knew.

41.  Throughout the transaction, co-defendant Penfield was aware of the fraud, the participation of Doss and Beroness, and that the product was essentially worthless and that his cohorts were perpetrating a large-scale fraud upon plaintiff.  Following payment.  Penfield embarked on a scheme to conceal his own involvement, blame others, conceal the deception, and delay discovery of the deception.  The statements in this email and subsequent communications were false and misleading.   With the co-defendants help and participation, Penfield was successful in enabling the fraud to be committed.

42. Each of the defendants individually and collectively, through their actions and unlawful inaction and concealment, enabled the fraud to be committed, and for plaintiff to suffer a substantial financial loss.  Had any of the defendants timely disclosed the fraud, misrepresentations by co-defendants, and the unlawful actions that were being committed, the fraud could have been avoided.

43.  During the period March to November, 2010, Estrategia and its partners were deceiving and defrauding other persons through its worthless letters of credit. Another victim filed a claim explaining how false statements were made "in and about  July 28 and 29, 2010' and how  it was defrauded in the same scheme. Exhibit E, ESVP complaint at para 17.

The complaint recites Estrategia's role,

Estrategia Investimentos ("Estrategia") is a Rio de Janiero, Brazil based bank and financial institution with offices in Miami, Florida that INTER ALIA, provides financial instruments known as Stand-By Letters of Credit ("SBLCs") for monetization at a loan to value less than their face amount to fund businesses such as Plaintiffs. At all material times, Dr. Sindhu Ratna K Baskar ("Dr. Ratna") was the Director of Operations and Compliance for Estrategia. Dr. Ratna provided the SBLCs at issue herein for Estrategia.

44. The ESVP complaint explained how the defendants there solicited each of the Plaintiffs through s promotional representations of their international ability to monetize collateral backed SBLCs. The Illinois plaintiffs there paid 1.3 million for MT 760 bank-to-bank SWIFTs totaling $1.5 billion in collateral from Estrategia which turned out to be worthless.

45. The scheme is the same and the story remarkably similar to plaintiff's and occurred during the same time frame. On September 18, 2010, the Plaintiffs received an e-mail saying that one of the culprits was "going to monetize the Instruments and fund the Plaintiffs as promised utilizing the same banks and SWIFT procedures.

46. Estrategia continues to this day to market its worthless letters of credit and to this day, its website lists defendant Sindhu as the compliance officer.

47. After the first fraud was done, Estrategia, Sindhu, and Doss tried to sell plaintiff another worthless letter of credit.

48. On or about February 10, 2011, Keith Doss wrote on behalf of A.J. Berrones & Assoc and proposed a commodity transaction which was actually a fraud.

50. On or about February 21, 2011, Doss contacted plaintiff to have him invest in a scheme involving oil or commodities and again involving bogus or worthless bank notes. Penfield and Berrones likewise participated. Doss and Berrones have periodically combined the bogus letter of credit fraud with other frauds such as oil or other commodities. On or about March 21, 2011, Keith Doss sent plaintiff materials about an oil refinery scheme which would likewise call upon plaintiff to invest large amounts of money for worthless things.

49. Along with Berroness, Doss continued to work with others to perpetrate fraud and defendant Podelski played a role with Doss and Berrones in soliciting a second fraud from plaintiff. On August 10, 2011, defendant Podelski wrote,

> Hi Keith: I spoke with our Chairman. He has spoken with several banks who have expressed interest in providing us with funding against the Estrategia instruments.  But they will not go further than expressing interest until (1) we receive an RWA from Estrategia and (2) we have a contract with Mr. Payer. We have also been asked if the instrument can be sent by Estrategia's branch in Frankfort.  We have also been asked if it could be issued as a bank guarantee instead of an SBLC. Please advise as you can. Thanks, Keith.

There were multiple false statements in the email.  There is no chairman, no branch in Frankfort, and the product sold, the same worthless SBLC (standby letter of credit).

50. As a result of each of the defendants' wrongful acts, plaintiffs have suffered injury and damage.  Plaintiffs have lost $275,000.  Plaintiff Payer has suffered anxiety, stress, and confusions trying to untangle what occurred.  It has been stressful and difficult for the 78 year old man to try to understand and untangle what happened.  The occurrence of a proposed second fraud illustrated his difficulty in understanding the transaction and what happened.

51. The common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events are intended to be part of the causes of action set forth below and incorporated in each count  as if fully set forth herein.

**Count One (Common Law Fraud)**

1. Plaintiff repeats the common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events as if fully set forth herein.

2. The acts of the defendants constitute common law fraud.

**Count Two  (New Jersey Consumer Fraud Act).**

1.  Plaintiff repeats the common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events as if fully set forth herein.

2. The sale and marketing of a fraudulent and worthless letter of credit is a transaction covered by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1. Et. seq.

3. In 1960, the Legislature passed the Consumer Fraud Act to combat deception and fraud.   The Act conferred on the Attorney General the power to investigate consumer-fraud  complaints and promulgate rules and regulations that have the force of law. *N.J.S.A.* 56:8-4.   In 1971, the Legislature amended the Act to "give New Jersey one of the strongest consumer protection laws in the nation." *Governor's Press Release for Assembly Bill No. 2402,* at 1 (Apr. 19, 1971). The

Legislature expanded the definition of "unlawful practice" to include "unconscionable commercial practices" and broadened the Attorney General's enforcement powers.

4. To protect the public and deter fraud, the amendment provided for private causes of action, with an award of treble damages, attorneys' fees, and costs.  The Act is to be broadly constructed in accordance with its remedial purpose.

5. The acts of defendants present a danger to citizens of New Jersey like plaintiff Payer.  The State of New Jersey has a substantial interest in deterring fraudulent schemes, providing compensation, and reducing the number of future victims.  With the Internet and a rise in international commerce, the number of fraudulent schemes has dramatically increased.  See Anatomy of Financial Fraud, Exhibit F

     A. Plaintiff is the type of victim the act was designed to protect.  Senior citizens are the frequent victims of scams letter the Bogus Letter of Credit Scheme.

6.  The acts of the defendants above constituted multiple acts of deceptions.  Each of the defendants and each of the acts or omissions played a material role in facilitating the fraud and causing or contributing to plaintiff's damages.

7. The defendants conduct constituted the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, in violation of N.J.S.A. 56:8-2.

8. Estrategia and its officers Antoniazzi and Sindhu,  engaged in multiple acts violating the New Jersey Consumer Fraud Act including, the

     A. The issuance of multiple useless and misleading letters of credit,

     B. Enlisting other defendants and coordinating the fraud with them,

     C. Having its agent  Metropolitan falsely misrepresent its financial worth and the value of the note,

     D. Creating a website falsely saying that it providing loans to medium and small businesses

     E. Other acts as set forth above.

9. Berrones and his company engaged in multiple acts violating the New Jersey Consumer Fraud Act including,

A. Appointing and authorizing Doss to solicit Payer for the fraudulent letters of credit,

B. Consulting and coordinating with Doss during the period March- December 2010  about what false statements to make, how they should be presented,

C. Falsely telling plaintiff that Estrategia was a 40 billion dollar commercial lending  institution whose letters of credit and other instruments were and would be readily honored,

D. After plaintiff paid the $$275,000, concealing the fraud by having Doss telling plaintiff they were looking into the  letter of credit processing, pretending that clerical or other issues were preventing the issuance,

E. After plaintiff contacted Estrategia and Sindhu, on or about January 24, 2011, Berrones wrote:

> Archie, you have been directed in previous conversations … not to break protocol as it pertains to bank contact.  I am instructing all parties all parties associated with A.J. Berrones and Associates to cease dealings with you regarding this transaction as you have continued breaking protocol and contact our banker without authorization.

In fact, breaking protocol had nothing to do with any problem, and Berrones wrote this to deceive plaintiff and provide justification for the failure to receive any money.  Concealing the fraud and deceiving plaintiff violated multiple sections of N.J.S.A. 56:8-2.

10. Defendants Gates and Podelske violated the Act by their participation in the scheme including their role as monetizer and proposed monetizers to have plaintiff Payer believe the bogus letters of credit would be honored by other banks.

**Count Three (Rico)**

1. Plaintiff repeats the common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events as if fully set forth herein.

2. 18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or racketeering activity or collection of unlawful debt."  Plaintiff incorporates the RICO statement as an exhibit.

A. 18 U.S.C. § 1964(c) creates a private right of action for any person

injured in his business or property by reason of violation of 18 U.S.C. § 1962, and provides for threefold damages sustained as well as recovery for the cost of the suit, including reasonable attorney's fees.

3.  As described in the Complaint, the Florida Supreme Court findings attached herein, Defendant's engaged in a "pattern of racketeering activity" by committing at least two acts of racketeering activity after the effective date of RICO and also within ten years of each individual act.

These include the following:

      A. the fraud impacting the plaintiff,

      B. the solicitation of a second letter of credit fraud and attempted deception with separate acts of fraud such as the preparation of a false financial statement of Estrategia's worth,

      C. the Illinois letter of credit advance fee fraud, with separate acts of fraud, falsification of documents, and deception,

      D. the multiple advance fee frauds set forth in the Florida Supreme Court report,

      E. The commission of numerous other frauds  as part of the Bogus Letter of Credit Scheme.  These cheated and attempted to cheat many other victims and utilized mail, wire, and other means to target victims in New Jersey and elsewhere for the solicitation of worthless letters of credit.

The same or similar tools used here were utilized by the defendants in the frauds including, the preparation of phony documents such as the fraudulent financial statements, false and deceptive statements about the letter of credit and Estrategia's worth, false statements to conceal the fraud, blaming the victim, and the solicitation of further frauds from the victim.

4. These acts were not only deceptive but criminal.  The Florida Supreme Court ordered disbarment of defendant Antoniazzi's counsel because it found that Antoniazzi and his company's acts, and those of its counsel involved fraudulent and criminal activities.  Additionally the Florida Supreme Apart reported criminal convictions of participants in the advance fee fraud,

      A number of persons Respondent associated with in connection with the purported transactions have been jailed, indicted, and/or convicted.     For example, Matthew Swartz was indicted in the U.S. District Court, Middle District of Pennsylvania for perpetrating similar advance fee scams. Tavares

and Hector Williams (president of Incontesa) have been arrested and charged in Panama.  Report, para 52.

The acts of the defendants here involved the same acts which the Florida Court found criminal and fraudulent.

5. The federal wire fraud statute, 18 U.S.C. § 1343, is identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering and provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

At various times and places enumerated in the complaint and Plaintiffs' Exhibits, defendants used wire and television communication to defraud plaintiff in multiple acts.

6. Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961 and 1962(c) and 1962 (d).  .

7. During the pertinent time in question, all Defendants did cooperate jointly and severally in the commission of two or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961 and did so in violation of the RICO law at 18 U.S.C. 1962(c). The federal mail fraud statute, 18 U.S.C. § 1341, which is identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering.  It provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for [*21] unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to

be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C. § 1341 (West 2010).

7. Plaintiff is informed and believes that each member of the Enterprise played a role and acted in mutual reliance for the common purpose of obtaining, transmitting, billing and collecting fraudulent, monies from plaintiff and engaging in other illegal acts.

8. Within the past three years, defendants have knowingly, intentionally, and/or recklessly engaged in an ongoing, pattern of racketeering activity under 18 U.S.C. § 1962(c)  by committing the predicate acts of wire and mail fraud by knowingly and intentionally implementing a scheme to deceive plaintiff and others.

9. Defendants, having devised or intending to devise a scheme or artifice to defraud its customers, for the purpose of executing such scheme or artifice or attempting to do so, placed and/or knowingly cause to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Postal Service or private or commercial interstate carrier, and/or received from these entities such documents.

10. The interstate commerce requirement of a RICO claim is satisfied here because the racketeering claims alleged in this Complaint.

11. Defendants' use of the mail, Internet and agreements with entities in other states in conjunction with the process of obtaining, transmitting, billing and collecting fraudulent monies, in furtherance of the racketeering scheme as alleged in this Complaint.

12. The pattern of racketeering activity described in this Complaint is continuous, ongoing, and will continue unless Defendants are enjoined from continuing these racketeering activities.

13. As a result of the defendants' wrongful acts, plaintiff has lost $275,000, incurred other costs and expenses, suffered mental stress and anxiety as a result of being deceived, and suffered other damages.

14. Under 18 U.S.C. § 1962 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. Racketeering is defined by Section 1961 and includes mail fraud.

15. The defendants' criminal acts were continuous and related, and they have contacted numerous potential victims and defrauded many through the bogus letter of credit fraud, coordinating their criminal activities.  Their coordination is illustrated by conferences calls involving many of the defendants.

## Count Three (Conspiracy and Acting in Concert)

1. Plaintiff repeats the common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events as if fully set forth herein.

2. Defendants conspired among themselves to violate the laws cited above, commit fraud, and deceive plaintiff.

3. The defendants acted in concert with one another in deceiving and defrauding plaintiff.  Each knew or had reason to know that the other's conduct constituted  a breach of duty and provided assistance to accomplish a tortious and unlawful result.

## Count Four (Punitive Damages)

1.  Plaintiffs repeat the common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events as if fully set forth herein.

2. Each of the defendants should be liable for punitive damages pursuant to the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.10  and other applicable law, Their conduct was deliberate and wrongful,  posed a substantial risk of harm, and indeed did inflict substantial harm of the plaintiff.

3. There were aggravating factors which include but are not limited to the following. The harm plaintiff suffered was the result of the defendants' deliberate acts and omissions and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who would be harmed. Their acts continued over a prolonged period of time, involving repetitive acts of fraud.

4. The defendants were fully aware that serious and substantial financial harm would arise from their own or co- defendant's conduct.   The public interest and innocent third parties have been impacted.

5. Upon learning that the initial conduct would likely cause harm, the defendants arranged to conceal their wrongful conduct, misrepresent facts to plaintiff, and

continue their wrongful and deliberate conduct.  This matter involves numerous deliberate violations of applicable law, and a blatant fraudulent scheme.

6.  Despite the Florida high court findings, the frauds continued.  Indeed, even with the exposure in a public document, the defendants did not change their protocol of charging large amounts for bogus and worthless loan commitments, lying about the status, pretending that unexpected problems were delaying completion, and then blaming the victim for any failures.

7. The continuation of this fraudulent scheme highlights the need for substantial deterrence, since defendant Antoniacci, Estategia and their fraudulent partners have reasoned that the profits from these schemes are large, in the millions of dollars, while the punishments minimal.   These frauds have been highly remunerative  for Estrategia and their officers and related companies, and the amounts paid in fines, judgments, and legal fees, but a relatively small percentage of the profits garnered.

8. Had there been some substantial punishment or deterrence at the time of the Florida investigation or before, the Estrategia defendants may well have stopped or limited their fraudulent activity and Mr. Payer would not have been defrauded.

9. While there are civil and criminal laws prohibiting fraud, deception, and forgery, Beroness and other defendants believed these laws were rarely enforced and easily evaded.  Beroness and other defendants have and continue to perpetrate other frauds, forge other documents, lie to other victims, and defraud the public, and will continue to do so, unless prompt, immediate, and substantial law enforcement action is taken.  Instead, the defendants believed that their skill in perpetrating fraudulent schemes, ability to hide funds, and willingness to provide false versions of what occurred would enable them to escape any criminal punishment or civil liability, and facilitate the commission of further frauds.   In a court submission, Berrones characterized the plaintiff's claim as a Hail Mary, reflecting Berrones' belief that the chance of civil or criminal liability from the fraud was minimal.

**Count Five (Negligence and Negligent Communication of Information )**

1.  Plaintiffs repeat the common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events as if fully set forth herein.

2.  Each of the defendants communicated or helped communicate, or facilitated the communication of false, deceptive, or materially misleading statements or information.

3.  Plaintiff Payer relied upon this false or misleading information to his detriment.

**Count Six (Contract and Third Party Beneficiary)**

1. Plaintiffs repeat the allegations contained above.

2. Plaintiff Payer and defendant Estrategia entered into a contract or plaintiff was a third party beneficiary of an agreement that provided for Estrategia to provide a letter of credit.

3. Plaintiff provided due and lawful consideration in reliance on the promises made by defendant and was intended to benefit from the document.

4. The Estrategia document bearing an issue date of November 24, 2010 and stated maturity date of December 24, 2011 reads:

> WE THE UNDERSIGNED,ESTRATEGIA INVESTIMENTOS SA, LOCATED AT RIO DE JANEIRO, BRAZIL, HEREBY CONFIRM WITH FULL BANK RESPONSIBILITY OUR IRREVOCABLE, TRANSFERABLE AND ASSIGNABLE STANDBY LETTER OF CREDIT  …

> IN THE AMOUNT OF TWO HUNDRED MILLION (200,000,000.00) USDOLLARS ONLY DUE THIRTEEN (13) MONTHS FROM THE DATE OF ISSUANCE OF THIS INSTRUMENT. PAYMENT FROM THIS STANDBY LETTER OF CREDIT IS AVAILABLE ON MATURITY BY BENEFICIARY'S

> FIRST WRITTEN DEMAND VIA AUTHENTICATED SWIFT. SUCH PAYMENT SHALL BE DULY HONORED ON DATE OF PRESENTATION TO US AND SHALL BE MADE WITHOUT SET-OFF AND CLEAR OF ANY DEDUCTION OR CHARGES, FEES OR WITHHOLDING OF ANY NATURE.

5. Estrategia violated the guarantees, representations, and covenants set forth in the note or documents it provided and instead failed to honor same as a result of which plaintiff suffered injury and damage.

6. Plaintiff is entitled to enforce the letter of credit in the stated amount or have the amounts paid to obtain the letter of credit returned.

**Count Seven (Breach of Fiduciary Duty)**

1. Plaintiffs repeat the allegations contained above.

2. By virtue of their capacity and plaintiff's reliance upon their knowledge, defendants owed a fiduciary duty to plaintiff Payer which was violated as a result of which plaintiff suffered injury.

**Count Eight (Individual Liability and Piercing the Corporate Veil )**

1. Plaintiffs repeat the allegations contained above.

2. Dr. Sindhu Ratna, also known as Sindhu Ratna K Baskar called himself the director of operations and compliance for defendant Estrategia. He arranged much of the fraudulent activities involving Estrategia. He drafted various emails, communicated falsehoods to plaintiff, and interacted with other defendants.

3. He was fully aware of the documents' fraudulent nature and worthless value, and deceived plaintiff and helped plan, conceal, and execute the Bogus Letter of Credit Scheme, on his own and with the aid of the codefendants.

4. Estrategia has insufficient assets to pay the amount of any judgment and plaintiff alleges and avers that assets have been concealed or fraudulently transferred to Ratna and other persons or entities. The proper corporate form has been ignored, and instead the entity used as an instrument of fraud, illegal conduct, and deception

5. Pablo Antoniazzi was the chief executive officer of Estrategia and arranged, supervised, and concocted the fraudulent schemes set forth in this complaint and in the Florida complaint.

6. A.J. Berroness is the owner and/or president of A.J. Berrones & Associates, LLC and supervised its activities. On his own and with Doss and Penfield conducted and/or supervised fraudulent activities involving A.J. Berrones & Associates, LLC including drafting various emails, communicating falsehoods to plaintiff, preparing fraudulent documents, receiving proceeds from the fraud and conspiring with other defendants.

**Count Nine (Injunction)**

1. Plaintiffs repeat the common allegations set forth in the Introductory Statement, Description of the Parties, and Chronology of Events as if fully set forth herein.

2. Pursuant to 18 U.S.C. § 1964(a), federal courts are vested with limited equitable jurisdiction -- i.e., jurisdiction to "prevent and restrain" future illegal conduct through the criminal enterprise.

3. Defendants have and continue to solicit new victims, made false statements, and commit other frauds and illegal acts which can and should be enjoined. Both based upon the specific RICO statute and other applicable law, an injunction should issue so that more people are not victimized.

**Jurisdiction and Venue**

1. The Court has jurisdiction based upon diversity and the RICO provision for jurisdiction.

*Defendants' Targeting of a New Jersey resident for their fraud.*

2. Plaintiff was a New Jersey resident during the period encompassed by this complaint.  He resided at 314 North West Avenue, Wenonah, New Jersey during the period February, 2010 to April, 2011.

3.  The defendants and each of them knowingly solicited a New Jersey resident  for its fraud.  During their solicitations, defendants knew the plaintiff was a New Jersey resident in several ways.  Plaintiff's emails displayed a New Jersey address  his New Jersey telephone number and New Jersey fax number.  Defendants would call Plaintiff at his New Jersey telephone number and received calls displaying same.

    A. New Jersey has a strong and pervasive interest in preventing its residents from being defrauded and that interest is set forth in various statutes, regulations, and statements.

4. From February 2010 to June, 2011, defendant Doss sent Payer or received from him at least 20 emails.  During most or all of these emails, Payer was identified as a New Jersey resident residing at the 314 North West Avenue, Wenonah address.  .  In the emails, Payer listed his New Jersey telephone number and New Jersey fax number.  Payer's company, Sino-American Technology was also listed in the emails as located at the same address.

5.  During the period February 2010, June, 2011, defendant Berrones contacted plaintiff on multiple occasions at his New Jersey address, through telephone calls, Skype communications, or email.   Berroness knew he was defrauding a New Jersey resident through his bogus  letter of credit scheme.

6. In the emails, Payer listed his New Jersey telephone number and New Jersey fax number.

7. During the period February 2010, June, 2011, Berroness contacted plaintiff on multiple occasions at his New Jersey address, through telephone calls, Skype communications, or email.   Berroness knew he was defrauding a New Jersey resident through his bogus  letter of credit scheme.

8.  From February 2010 to June, 2011, Metropolitan acting as Estrategia's agent, s sent, received, or were copies on  at least 10 emails.  During most or all of these emails, Payer was identified as a New Jersey resident residing at the 314 North West Avenue, Wenonah address.  Payer's company, Sino-American Technology was also listed in the emails as located at the same address.

Metropolitan and Estrategia knew they were defrauding a New Jersey resident through the bogus  letter of credit scheme.

9. From on or about December 2010 to March, 2011, Estrategia acted directly in as the fraud soliciting a New Jersey resident for its fraud and deception.  It helped

prepare or authorized its agent to prepare the bogus letter of credit and receiving part of the funds defrauded from plaintiff.  Sindhu falsely said that the problem was that an error had caused delay in the processing of the letter of credit, and engaged in other deceptions as set forth above.  While making this statement, Sindhu and Estrategia knew that plaintiff was a New Jersey resident and their statement was made as part of a fraud and practice to deceive him.  Sindhu and Estrategia conspired with the defendants to deceive and mislead plaintiff.

10. Estrategia and its principals Sindhu and Antoniazzi  have and continues to market its useless letters of credit in New York and New Jersey, victimizing residents of the State and others.

11. The wire transfer which comprised plaintiff's damages was made by plaintiff delivering the monies to a location of a bank in New Jersey, and the New Jersey bank transmitting the funds.  The monies were transmitted to a bank in New York State.

12.  Witnesses and documents are located in New Jersey.

13. The RICO jurisdiction statute provides for jurisdiction in New Jersey where a party is located.  18 U.S.C. 1965   Plaintiff is located in New Jersey.  That is also the location where the monies were transferred, the damage occurred,  and the location where the victim was targeted.

*Diversity Jurisdiction*

14. This court also has diversity jurisdiction.  Plaintiff is located in New Jersey. Each of the defendants are located outside of New Jersey and this matter therefore involves a dispute between citizens of different states.   The location of the defendants has been set forth above.  The amount is dispute substantially exceeds the jurisdictional threshold of 100,000

Wherefore plaintiffs demand the following relief:

1. compensatory damages and punitive damages, each in the amount of 5 million,

2. interest, legal fees, and costs,

3. a preliminary and permanent injunction, preventing or enjoin the commission of further fraudulent and illegal acts.

**Demand for Jury trial**

Plaintiffs demand a trial by jury

Dated: January 3, 2013

*Howard Gutman*

_____

Howard A. Gutman
Attorney for Plaintiffs

**Index to Exhibits**

Exhibit A   Florida Supreme Court Report

Exhibit B   Estrategia false letters of Credit

Exhibit C   ESVP victim complaint

Exhibit D   Correspondence from defendants

Exhibit E   Estrategia false financial statement

Exhibit F   Anatomy of Financial Fraud

Exhibit G   Rico Case Statement